UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARSHA B., | ) |
| | ) |
|         Plaintiff | ) |
| | ) |
| v. | )   No. 2:22-cv-00314-GZS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|         Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability appeal asserts that the Administrative Law Judge (ALJ) both failed to follow agency policy and mischaracterized the record in assessing claimed cognitive deficits resulting from multiple sclerosis. *See* Plaintiff's Brief (ECF No. 13) at 10-14. I agree and conclude that, as a result, the ALJ's omission of any mental functional limitations is unsupported by substantial evidence. Accordingly, I recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

**I. Background**

The ALJ found, in relevant part, that the Plaintiff (1) had a severe impairment of multiple sclerosis, *see* Record at 50; (2) retained the residual functional capacity (RFC) to perform light work except that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, kneel, crouch, and crawl;

1

occasionally stoop; and needed to avoid concentrated exposure to extreme heat, *see id*. at 52; (3) could perform her past relevant work as a computer programmer, personal manager, executive secretary, and order taker, which did not require the performance of work-related activities precluded by her RFC, *see id*. at 57; and (4) therefore had not been disabled at any time from February 26, 2020, her alleged onset date of disability, through the date of the decision, November 10, 2021, *see id*. at 48, 57. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id*. at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The Plaintiff contends that the ALJ both failed to apply the Commissioner's psychiatric review technique (PRT), 20 C.F.R. § 404.1520a, including the so-called "Paragraph B criteria,"[1] and mischaracterized record evidence in omitting to assess any limitations stemming from her claimed cognitive impairment, undermining his conclusion that she was capable of returning to past skilled work. *See* Plaintiff's Brief at 10-14.

The Commissioner counters that the ALJ adequately addressed the Paragraph B criteria at Step 2 in finding that the Plaintiff did not have a severe anxiety impairment and at Step 3 in concluding that her multiple sclerosis did not meet the criteria of Listing 11.09—a finding that she notes the Plaintiff does not even contest. *See* Commissioner's Response (ECF No. 15) at 3-4; *compare* 20 C.F.R. § 404.1520a(c)(3)-(4) *with* 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.00(G)(1). She adds that the ALJ supportably assessed no cognitive functional restrictions at Step 4, analogizing this case to *Cherrl N. v. Saul*, No. 1:19-cv-00274-JDL, 2020 WL 6130745 (D. Me. Oct. 19, 2020), in which this Court held that an ALJ "properly relied on normal mental status findings, conservative treatment, opinion evidence, and the fact that the [claimant's] physicians 'did not flag any issues'" to find that a claimant had no cognitive deficits. Commissioner's Response at 2-3.

---

[1] The PRT requires a rating of the degree of functional limitation (none, mild, moderate, marked, or extreme) in the four Paragraph B criteria of (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3)-(4).

The Plaintiff has the better argument.

The Paragraph B criteria do not exist in a vacuum. They are derived by following the PRT, which requires (1) an assessment of whether a claimant has a medically determinable mental impairment, (2) if so, a rating of the degree of resulting functional limitation (none, mild, moderate, marked, or extreme) in each of the four Paragraph B criteria, (3) a determination whether the impairment is severe (that is, imposes more than mild functional limitations in one or more of the Paragraph B criteria), (4) if so, a determination whether the impairment meets or equals a Listing, (5) if not, an assessment of the claimant's mental residual functional capacity, and, finally, (6) documentation of the application of the PRT at every stage of review. *See* 20 C.F.R. § 404.1520a(b)-(e).

Although the ALJ followed the PRT in analyzing the Plaintiff's claimed anxiety, he did not do so with respect to her claimed cognitive difficulties. *See* Record at 51. He also lacked the benefit of an expert PRT review. On both initial review and reconsideration, agency nonexamining psychologists made PRT findings concerning anxiety but not cognitive issues, and agency nonexamining physicians assessed only the Plaintiff's physical limitations. *See id.* at 97-100, 106-10. While the ALJ acknowledged that the Plaintiff's "primary mental health complaints throughout the record related to her cognitive functioning, as related to her multiple sclerosis," he never explained whether he found a medically determinable impairment; if so,

4

whether it was severe; and, if severe, whether it caused functional limitations. *Id.* at 51-57.[2]

Compounding that problem, the ALJ mischaracterized the record in certain respects in explaining why he discounted the Plaintiff's subjective allegations of cognitive difficulties. He summarized:

> The [Plaintiff's] primary complaint regarding her MS was the development of cognitive deficits. At one point [she] was administered an MMSE and scored 21 out of 30,[3] but treatment notes otherwise do not document cognitive deficits or abnormal presentation. Treatment notes documented her appropriate affect, that she was alert and fully oriented, and that she had normal attention, concentration, and fund of knowledge (e.g., exhibit B9F, p. 4; B11F, p. 1). It is noted that the [Plaintiff] was not referred for a formal cognitive evaluation or any other type of intensive treatment. Dr. Inger [David Inger, M.D., the Plaintiff's primary care physician] recommended she do puzzles and games, but did not document specific concerns regarding her cognitive functioning. In a function report, the [Plaintiff] detailed deficits in daily activities due to her cognitive functioning, but the lack of treatment or further investigation of these reported symptoms cuts against the persuasive value of her allegations.

*Id.* at 55.

This recitation minimizes the extent to which the Plaintiff sought treatment and her treating physicians expressed concern regarding her cognitive functioning

---

[2] My research indicates that because the Plaintiff had a standalone mental impairment of anxiety, the ALJ should have applied one of the mental disorders listings, Listing 12.02 (Neurocognitive Disorders), rather than Listing 11.09 (Multiple Sclerosis), in evaluating her claimed cognitive deficits. *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.00(A) ("If your neurological disorder results in only mental impairment or if you have a co-occurring mental condition that is not caused by your neurological disorder (for example, dementia), we will evaluate your mental impairment under the mental disorders body system, 12.00."); *id.* § 12.00(B)(1)(b) (noting that examples of mental disorders evaluated under Listing 12.02 include those caused by neurological diseases such as multiple sclerosis). Even assuming that applying Listing 12.02 would have made no difference at Step 3, it presumably would have made a difference in the process by which this claim was analyzed, entailing referral to an agency nonexamining mental health expert for analysis of the Plaintiff's cognitive as well as anxiety complaints, including the completion of a PRT form.

[3] The "MMSE" test to which the ALJ referred was a Montreal Cognitive Assessment. *See* Record at 597.

and took steps to address it. As the Commissioner acknowledges, the Plaintiff did undergo a neuropsychological evaluation in 2017, prior to her alleged February 26, 2020, onset date of disability. *See* Commissioner's Brief at 6. On August 20, 2020, Dr. Inger not only encouraged the Plaintiff to work on her memory with puzzles and games but also stated that he suspected that her memory issues were related to her multiple sclerosis and would refer her to a neurologist to establish care. *See* Record at 455. On January 28, 2021, the Plaintiff established care with Tara Kimbason, M.D., of Central Maine Neurology, who noted that, "per [a] report from the Goodwill Neurorehab center," the results of the 2017 neuropsychological evaluation were "'most remarkable for borderline visual attention skills and impaired visual memory abilities.'" *Id*. at 599-600.

The Plaintiff next saw Dr. Kimbason on March 1, 2021, at which time she complained of declining cognitive function and "brain fog." *Id*. at 595-96. The Plaintiff completed a Montreal Cognitive Assessment on which she scored twenty-one of thirty possible points, below the "[n]ormal" score of twenty-six. *Id*. at 597. Dr. Kimbason's "[o]verall impression" was that the Plaintiff had "possible RRMS in the setting of cognitive impairment." *Id*. at 595.[4] At Dr. Kimbason's request, Dr. Inger then referred the Plaintiff to a neurologist specializing in multiple sclerosis, Alison C. Daigle, D.O., of St. Mary's Neurology Associates. *See id*. at 483, 592, 595-96.

---

[4] "RMMS" is relapsing-remitting multiple sclerosis, "a type of multiple sclerosis (MS) that occurs when you have flare-ups (also called relapses or exacerbations) of symptoms followed by periods of partial or complete recovery (remission)." Relapsing-Remitting Multiple Sclerosis (RRMS), The Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/14905-rrms-relapsing-remitting-multiple-sclerosis (last visited Oct. 4, 2023).

The Plaintiff saw Dr. Daigle on May 13, 2021, complaining of "worsening cognitive issues," among them that "she will get lost even driving to the corner store." *Id*. at 483.  Dr. Daigle assessed her with cognitive deficits secondary to multiple sclerosis and noted, "We will see if we can get her in to [sic] the Comprehensive MS Clinic sometime this summer for full evaluation including cognitive therapy."  *Id*. at 488.  The Commissioner argues that there is "no evidence a formal referral was ever actually made."  Commissioner's Response at 8.  However, Dr. Daigle made clear that, in her view, both a full evaluation and treatment in the form of cognitive therapy were warranted.

Against this backdrop, the ALJ's reliance on "the lack of treatment or further investigation of" the Plaintiff's reported cognitive symptoms was misplaced.  The Commissioner's citation to *Cherrl N*. does not tip the balance in her favor.  In that case, the ALJ followed the PRT in making an express finding that the claimant had no medically determinable cognitive impairment and cited substantial evidence in support of that conclusion, including "the opinions of multiple medical professionals that specifically addressed [the claimant's] mental capacity," "notes of [the claimant's] treating physicians, who did not flag any issues with [her] cognitive limitations," and evidence that the claimant "first raised the issue of poor concentration after obtaining counsel" and "declined a referral for mental health treatment from her own doctor."  *Cherrl N*., 2020 WL 6130745, at *1-2, *6 (D. Me. Oct. 19, 2020).

In this case, by contrast, the ALJ both failed to follow the PRT and discounted the Plaintiff's subjective allegations in part on the basis of mischaracterizations of the record. As a result, the Court cannot discern that his omission of any functional limitations flowing from the Plaintiff's cognitive impairment is supported by substantial evidence, requiring remand. *See Armata v. Berryhill*, No. 3:17-cv-30054-KAR, 2018 WL 4829180, at *13-15 (D. Mass. Oct. 4, 2018) (holding remand warranted when an ALJ found a severe impairment of anxiety at Step 2 but failed to follow the remaining PRT steps, "preclud[ing] effective review by this court"); *Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018) ("[W]hen failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway," reversal and remand are warranted.); *Nguyen*, 172 F.3d at 35 (An ALJ's findings of fact "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." (citation omitted)).

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

8

***Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.***

Dated: October 5, 2023

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge
